## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

YASSINE SOUMAH,

    Plaintiff,

    v.

GREGORY COLLETT,
*Director, Baltimore Field Office,*
*U.S. Citizenship and Immigration Services,*

    Defendant.

Civil Action No. 23-2473-TDC

### MEMORANDUM OPINION

Plaintiff Yassine Soumah has filed a civil action against the Director of the Baltimore Field Office of United States Citizenship and Immigration Services ("USCIS"), in which he seeks judicial review pursuant to 8 U.S.C. § 1421(c) of the agency's denial of his application for naturalization as a United States citizen. USCIS has filed a Motion for Summary Judgment, and Soumah has filed a Cross Motion for Summary Judgment. Both Motions are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, USCIS's Motion will be DENIED, and Soumah's Motion will be GRANTED.

### BACKGROUND

#### I.   Statutory Requirements

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, governs the admission of foreign nationals to the United States. The INA grants the "sole authority to naturalize persons as citizens of the United States" to the Attorney General of the United States.

8 U.S.C. § 1421(a). Since the naturalization function was transferred to USCIS, which is a component agency of the United States Department of Homeland Security ("DHS"), that authority is now exercised by the Secretary of Homeland Security. *See Yith v. Nielsen*, 881 F.3d 1155, 1158 (9th Cir. 2018) (stating that courts interpret references to the Attorney General in INA provisions addressing authority over naturalization "as referring to the authority of the USCIS"); *Mestanek v. Jaddou*, 93 F.4th 164, 170-71 (4th Cir. 2024) (describing the transfer of the administration of federal immigration laws to USCIS and other components within DHS "under the purview of the . . . Secretary of Homeland Security").

As relevant here, the INA sets forth three requirements for naturalization:

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a). The INA further states that "[e]xcept as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of" the INA. 8 U.S.C. § 1429.

The requirement of lawful admission for permanent residence can be satisfied if the applicant was a refugee, or a spouse or child of a refugee, whose status was adjusted to that of lawful permanent residence. The requirements for such adjustment of status are as follows:

The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—

(1) applies for such adjustment,

2

(2) has been physically present in the United States for at least one year after being granted asylum,

(3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee,

(4) is not firmly resettled in any foreign country, and

(5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this chapter at the time of examination for adjustment of such alien.

8 U.S.C. § 1159(b).

## II.    Application for Lawful Permanent Residence

Plaintiff Yassine Soumah was born in Tanzania in 1971 and is a citizen of Guinea. He currently resides in Greenbelt, Maryland. In 2000, Soumah entered the United States pursuant to a visitor visa. On October 26, 2001, he married Mariam Diane. On January 4, 2002, after Diane had applied for and was granted asylum in the United States, she filed a Form I-730, Refugee/Asylee Relative Petition, on behalf of Soumah. The petition was approved on March 16, 2002, and Soumah was granted asylee status based on his marriage to Diane.

On November 14, 2007, Soumah filed Form I-485, an Application to Register Permanent Residence or Adjust Status. On September 16, 2008, while his Form I-485 had yet to be adjudicated, Soumah and Diane divorced. On September 9, 2009, Soumah submitted the divorce decree to USCIS. On September 29, 2009, USCIS approved Soumah's Form I-485 application, and Soumah was granted status as a lawful permanent resident. Pursuant to 8 U.S.C. § 1159(b), the date of adjustment of status was recorded as September 29, 2008, one year prior to the actual date of approval.

3

### III.    Application for Naturalization

On February 15, 2017, Soumah applied for naturalization by filing Form N-400, Application for Naturalization. At the time of this application, Soumah had continuously resided in the United States for the five preceding years, had been physically present for at least two and a half of those five years, had lived in Maryland for at least three months before filing, and had good moral character for the five preceding years. On August 24, 2017, Soumah appeared for his naturalization interview, at which he passed the English proficiency test and the United States history and government examination. On March 11, 2019, however, USCIS denied Soumah's application for naturalization. In the decision letter, USCIS stated that Soumah did not meet the requirement for naturalization that he was lawfully admitted for permanent residence because he was legally divorced at the time that his Form I-485 was approved. Noting that Soumah had "obtained [his] permanent resident status as a derivate asylee through [his] ex-spouse," USCIS concluded that the September 16, 2008 divorce terminated Soumah's status as a derivative asylee, such that he was actually "ineligible to adjust status as a derivative asylee" to that of a permanent resident at the time that his Form I-485 application was approved on September 29, 2009. N-400 Decision at 2, Compl. Ex. 3, ECF No. 1-3.

On April 10, 2019, after the denial of his naturalization application, Soumah filed Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. On September 29, 2020, USCIS affirmed the denial of Soumah's naturalization application and denied Soumah's Form N-336 request based on the conclusion that Soumah did not lawfully adjust to permanent resident status because he and Diane were legally divorced before his adjustment of status was granted on September 29, 2009. USCIS also stated that "for adjustment of status purposes, a derivative asylee must continue to meet the definition of a spouse of the principal asylee at the time of filing, and at

4

the time of approval of the adjustment application." N-336 Decision at 2, Compl. Ex. 4, ECF No. 1-4. The decision advised Soumah that he could request judicial review of its final determination by filing a petition in federal district court.

## IV.    Procedural History

On September 12, 2023, Soumah filed the Complaint in this case in which he requested a *de novo* review of USCIS's denial of his application for naturalization. On March 28, 2024, USCIS filed a Motion to Dismiss the Complaint in which it argued that Soumah's naturalization application was properly denied because, pursuant to 8 U.S.C. § 1159(b), a noncitizen granted asylum based on a marriage to an asylee who then seeks to adjust status to lawful permanent residence must have continued to be married to the asylee up to the date that the adjustment of status application was actually adjudicated. On June 26, 2024, this Court, in a memorandum opinion, denied the Motion based on its conclusion that, as a matter of law, § 1159(b) requires only that an applicant such as Soumah continued to be married to an asylee up to the date of the filing of the application for adjustment of status. *Soumah v. Collett*, 738 F. Supp. 3d 631, 643 (D. Md. 2024) ("*Soumah I*"). On August 9, 2024, USCIS filed an Answer to Soumah's Complaint.

## DISCUSSION

In its Motion for Summary Judgment, USCIS reasserts the same legal argument underlying its Motion to Dismiss, that Soumah was not eligible for adjustment of status to lawful permanent residence, and thus was not lawfully admitted for permanent residence, because § 1159(b) required that he remain married to Diane up to the date that his adjustment of status application was actually adjudicated. In his Cross Motion for Summary Judgment, Soumah asserts that, based on the Court's prior interpretation of § 1159(b), Soumah was eligible for adjustment of status because he continued to be married to Diane at the time of his application for adjustment of status, and that

5

because Soumah undisputedly meets all other requirements for naturalization, the Court should grant his application for naturalization.

## I.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.   Law of the Case

In the Cross Motions for Summary Judgment, the parties agree on the underlying facts and that Soumah meets all of the statutory requirements for naturalization except for the one in dispute: the requirement that Soumah was "lawfully admitted to the United States for permanent residence in accordance with all applicable provisions" of the INA, 8 U.S.C. § 1429, through USCIS's grant to him of adjustment of status under 8 U.S.C. § 1159(b) in September 2009. Further, they agree

6

that this dispute turns entirely on the legal question of whether the eligibility requirement for adjustment of status under § 1159(b)(3), that an applicant "continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee," is satisfied if the applicant is a spouse of a refugee or asylee as of the date of the application for adjustment of status, or only if the applicant remains married to the refugee or asylee up to the date of final adjudication of the application.

The Court addressed and decided this precise legal question in its June 26, 2024 memorandum opinion denying USCIS's Motion to Dismiss on the merits when it concluded, based on the text of 8 U.S.C. § 1159(b), case law interpreting analogous provisions of the INA, and the principle that courts are to avoid interpretations that produce absurd, unreasonable, or arbitrary results, that § 1159(b)(3) requires only that an applicant remain the spouse of a refugee or asylee as of the date of application for adjustment of status. *Soumah I*, 738 F. Supp. 3d at 637–44. The Court incorporates that memorandum opinion in its entirety by reference. *Id.* at 631–44. That ruling, which was reached after full briefing on the Motion to Dismiss, is the law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983) (stating that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Where the Joint Statement of Undisputed Facts applicable to the Cross Motions does not differ in any material way from the allegations in the Complaint that were considered on the Motion to Dismiss, and the parties offer no arguments that could not have been asserted at the time of the Motion to Dismiss, the Court finds that the law of the case doctrine applies, and the Court's prior ruling continues to govern in this case. *See id.* The Court therefore need not revisit its prior ruling and reaffirms, for the reasons stated in the memorandum opinion on the Motion to Dismiss, its conclusion that 8 U.S.C. § 1159(b)(3) requires

7

only that a derivative asylee continue to be married to an asylee spouse at the time of application in order to be eligible for adjustment of status to lawful permanent residence. *Soumah I*, 738 F. Supp. 3d at 643.

**III.    Additional Arguments**

Nevertheless, in its discretion, the Court will consider and address legal arguments asserted by USCIS for the first time in its Motion for Summary Judgment that were therefore not addressed in the Court's memorandum opinion on the Motion to Dismiss. *See* Fed. R. Civ. P. 54(b) (providing that an "order or other decision . . . may be revised at any time before the entry of judgment").

**A.    Statutory Text**

First, without directly addressing the Court's analysis and interpretation of the text of § 1159(b) in its ruling on the Motion to Dismiss, USCIS again argues that the text of § 1159(b) can only be interpreted as requiring an applicant to continue to be married through the date of adjudication. Although USCIS focuses on the dictionary definition of "continues" and the fact that it was used in the present tense, this Court's prior analysis of the text of §1159(b) addressed this specific language without adopting any specialized definition of that word and found that USCIS's interpretation was not the only reasonable one because "the text of § 1159(b)(3) does not specifically state how long an individual seeking to adjust status to lawful permanent residence must 'continue[] to be' the spouse of the qualifying refugee." *Soumah I*, 738 F. Supp. 3d at 639.

USCIS also argues that the Court's prior textual analysis was flawed because it relied on the fact that Congress specified that one of the five requirements for adjustment of status, that the applicant be "admissible" to the United States under the INA, is to be determined "at the time of examination for adjustment." 8 U.S.C. § 1159(b)(5). This Court reasoned that this language

8

demonstrates that Congress knew how to require that a criterion be satisfied at the time of adjustment of status, and where such language was not included in § 1159(b)(3), Congress did not intend to require that status as a spouse of a refugee or asylee must continue through the date of adjustment of status. *See Soumah I*, 738 F. Supp. 3d at 639. USCIS asserts that the term "examination for adjustment" is not properly equated with adjudication and instead refers to an intermediate step, apparently focused solely on assessing whether the applicant is admissible under the INA, which occurs before the actual adjudication of an application for adjustment of status. Def.'s Reply at 5–6, ECF No. 43.

Where USCIS asserted this argument only in its reply brief, thereby depriving Soumah of the opportunity to respond to it, the Court could properly deem it to have been waived. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court." (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013))). Even considering USCIS's argument, however, it is unconvincing for two reasons. First, USCIS provides no legal authority, whether statutory, regulatory, or otherwise, in support of its assertion that "examination for adjustment" is a separate and distinct event that occurs before the actual adjustment of status, which USCIS acknowledges is synonymous with the "adjudication" of the application. *See* Reply at 6. Rather, the term "examination for adjustment" connotes a review of the application as to all requirements for adjustment of status, not just the single criterion of admissibility. Indeed, the only case law that directly or indirectly addresses this question effectively equates "examination of adjustment" with the act of adjustment itself. *See Dorbor v. United States*, 379 F. Supp. 3d 765, 770 (W.D. Wis. 2019) (concluding that the reference to "the time of examination for adjustment" in 8 U.S.C. § 1159(b)(5) "clearly relates to an applicant's status at the time of the agency's decision"); *see also*

9

*Amrollah v. Napolitano*, 710 F.3d 568, 572 & n.2 (5th Cir. 2013) (observing that, in the plaintiff's case, the "time of examination for adjustment" as referenced in § 1159(b)(5) occurred in 2010, which was also when the plaintiff's "application for adjustment of status was finally adjudicated").

Second, even if the "examination for adjustment" is an event that occurs at some point prior to the actual adjustment decision, the reference in § 1159(b)(5) still strongly supports the Court's interpretation. Within § 1159(b), of the requirements for adjustment of status, only the requirement that the applicant be admissible under the INA carries the qualifier that it is to be satisfied "at the time of examination for adjustment." 8 U.S.C. § 1159(b)(5). The only logical reason for such a distinction is that Congress determined that the requirement of admissibility should be assessed closer in time to the adjustment decision, as grounds for inadmissibility include such disqualifying conduct as convictions for crimes involving moral turpitude and terrorist activity, *see* 8 U.S.C. § 1182(a)(2), (3), such that an applicant who satisfied the general eligibility criteria at the time of application would nevertheless be denied if more recent conduct rendered the applicant unsuitable for admission to the United States. In contrast, it would make little sense for Congress to have designated a specific time for a determination on admissibility to occur *before* the date that all other criteria would need to be met, none of which carry any potential national security or public safety implications. The Court therefore reaffirms its conclusion that the inclusion of the qualifying language in § 1159(b)(5) bolsters its interpretation of § 1159(b)(3).

Finally, the Court finds USCIS's new arguments that the "preamble" language in § 1159(b), consisting of the language that the Secretary, "in the Secretary's . . . discretion . . . may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum," signifies that the eligibility requirements should be assessed as of the time of adjudication to be wholly unpersuasive. 8 U.S.C. § 1159(b). Had Congress intended to establish

such a rule, it would have done so explicitly rather than, as USCIS argues, conveying that message through the cryptic means of making the subject of this language a government actor rather than the applicant. Moreover, the reference to the Secretary's discretion does not signify that eligibility requirements must be assessed at the time of adjudication. If anything, USCIS's view that the Secretary may decline to grant adjustment of status to an otherwise eligible applicant as a matter of discretion addresses any potential concern that, based on intervening events, some applicants who meet all eligibility requirements at the time of application should be denied adjustment of status when their applications are finally adjudicated.

As for the argument that the reference to the authority to adjust status for "any alien granted asylum," 8 U.S.C. § 1159(b), implies that only those with *de jure* and *de facto* asylee status at the time of adjudication are eligible, that argument is undermined by *Cela v. Garland*, 75 F.4th 355 (4th Cir. 2023), the only authority cited by USCIS in support of this point. As this Court noted in denying the Motion to Dismiss, while the court in *Cela* "concluded that '§ 1159(b) unambiguously precludes an alien whose asylum status has been terminated from adjusting to lawful permanent resident status,' it notably did not frame the issue as whether an applicant had to have asylee status at the time of adjustment." *Soumah I*, 738 F. Supp. 3d at 642 (quoting *Cela*, 75 F.4th at 365). Rather, the court "instead focused on the fact that 'Cela had no asylum status *at the time he applied* to become a lawful permanent resident.'" *Id.* (emphasis added) (quoting *Cela*, 75 F.4th at 365). *Cela* therefore supports the conclusion that a derivative asylee's status is assessed at the time of application. *Cela*, 75 F.3d at 365.

For all of these reasons, the Court reaffirms its prior analysis of the statutory language under which it concludes that § 1159(b) requires only that an applicant such as Soumah continued

to be married to an asylee up to the date of application for adjustment of status. *Soumah I*, 738 F. Supp. 3d at 643.

### B.     Other Statutory Provisions

USCIS's arguments based on other provisions of the INA are likewise unpersuasive. USCIS asserts that there are "many other statutory provisions in the INA governing immigration benefits" under which in the absence of express language stating when eligibility is to be determined, it is "presumed that conditions must be met up until the benefit is granted." Def.'s Mot. Summ. J. at 17, ECF No. 37-1. Defendants, however, notably fail to address the Court's analysis of the highly analogous provision in 8 U.S.C. § 1255(d), under which an applicant who entered the United States as a result of a marriage to a United States citizen may seek adjustment of status to lawful permanent residence, and the case law from multiple United States Courts of Appeals holding that the determination of whether an applicant is eligible for adjustment of status under that provision is based on the facts as of the time of application. *See Soumah I*, 738 F. Supp. 3d at 640–41 (citing cases).

Instead, USCIS points to other INA provisions, most of which derive from the distinctly different context of applications by individuals lacking legal status in the United States who seek the benefit of some kind of legal status. Beyond this distinction, USCIS's examples are markedly distinguishable. For example, although USCIS asserts that an applicant for asylum under 8 U.S.C. § 1158 is required to establish a well-founded fear of persecution "right up until the time they are considered for asylum," Def.'s Mot. Summ. J. at 17, the source for this purported rule is not a general determination that all eligibility requirements must be established as of the time of adjudication based on an interpretation of an otherwise silent statute; rather, it is a specific regulation, codifying what is known as the "changed circumstances" doctrine, which provides that,

12

in asylum proceedings, USCIS can rebut an asylum applicant's presumption of a well-founded fear of future persecution based on past persecution by demonstrating "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." *Essohou v. Gonzales*, 471 F.3d 518, 520 (4th Cir. 2006) (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A)). No such regulation or doctrine applies to 8 U.S.C. § 1159(b). Similarly, the requirement that children seeking to adjust status under 8 U.S.C. § 1255(m)(3) based on their parent's nonimmigrant "U Visa," which offers temporary legal status to certain noncitizen crime victims who have cooperated in criminal cases, must maintain a qualifying family relationship through the adjudication process also derives from a specific regulation, 8 C.F.R. § 245.24(g)(2). *See Contreras Aybar v. Sec'y U.S. Dep't of Homeland Security*, 916 F.3d 270, 272 (3d Cir. 2019). Again, there is no equivalent regulation applicable to individuals seeking adjustment of status under 8 U.S.C. § 1159(b).

Finally, though USCIS cites to a requirement that in cancellation of removal proceedings, an applicant must establish that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative as of the time of removal, that requirement flows from the specific language of the relevant statutory provision, which states that a petitioner must show that the "removal" would result in such hardship. 8 U.S.C. § 1229b(b)(1)(D). Thus, the relevant time to assess such hardship would necessarily be at the time of adjudication of the application, which would immediately precede removal if cancellation were denied. *See Huerta v. Garland*, No. 23-3361, 2024 WL 2142068, at *3 (6th Cir. Feb. 8, 2024) (cited by USCIS) ("The plain meaning of the text instructs courts to ask whether 'removal would result in . . . hardship.' So we must assess hardship at the time of removal because that is when the hardship would result, not during the pendency of the request to cancel removal." (quoting 8 U.S.C. § 1229b(b)(1)(D))).

13

USCIS cites one example, a provision of the INA under which certain investors may seek immigrant visas pursuant to 8 U.S.C. § 1153(b)(5), in which there is specific language establishing that eligibility requirements are to be assessed as of the time of application, and argues that it illustrates that Congress knows how establish such a rule if it chooses to do so. *See* 8 U.S.C. § 1154(a)(1)(H)(ii) (specifying that an applicant "who was eligible for such classification at the time of such filing shall be deemed eligible for such classification at the time such petition is adjudicated"). This argument, however, fails to account for the fact that, as discussed in *Soumah I*, numerous courts have found, in relation to the more closely aligned provisions in 8 U.S.C. §§ 1255(a) and (d), that eligibility for adjustment of status is determined based on the facts as of the date of application. *Soumah*, 738 F. Supp. 3d at 640–41; *see Carpio v. Holder*, 592 F.3d 1091, 1102 (10th Cir. 2010); *Lockhart v. Napolitano*, 573 F.3d 251, 260 (6th Cir. 2009); *Choin v. Mukasey*, 537 F.3d 1116, 1121 (9th Cir. 2008).

The Court therefore finds that the various provisions from elsewhere in the INA cited by USCIS do not provide a basis to alter the Court's conclusion, based on the statutory language itself and the case law interpreting the highly related provisions in §§ 1255(a) and (d), that the eligibility requirements for adjustment of status under § 1159(b)(3) are properly determined as of the date of application. *See Soumah I*, 738 F. Supp. 3d at 637–41.

## C.    Absurdity

In *Soumah I*, this Court found that the requirement of 8 U.S.C. § 1159(b)(3) is to be assessed as of the date of application in part because to conclude otherwise would lead to the absurd result that eligibility could be determined based on the vagaries of when USCIS chose to review and adjudicate the application. *See id.* at 639–41. In its present Motion, USCIS does not address that aspect of the Court's ruling but instead argues that that accepting Soumah's position

14

would instead lead to other purportedly absurd results such as: (1) requiring "USCIS to adjudicate claims of those who have withdrawn their adjustment application"; (2) requiring USCIS to "disregard an applicant's present resettlement in another country after the application"; (3) undermining the "rationale for providing asylees and their derivatives status in the first place"; and (4) incentivizing applicants to "manipulate their eligibility, creating unfair advantages." Def.'s Mot. Summ. J. at 21–26. However, if an application is withdrawn, there is no need for USCIS to adjudicate it. Similarly, where, as USCIS has argued, it maintains discretion over whether to actually grant adjustment of status to an eligible applicant, it need not grant such status to an applicant eligible as of the date of application who later became resettled in another country, even assuming that such individual was continuing to pursue the application.

USCIS has not clearly articulated how Soumah's interpretation would lead to the last two results, but any such concerns arise only if USCIS continues to take years upon years to adjudicate applications. Where the Government, not applicants, has control over the timing of the adjudication process, it can avoid any adverse impacts by adjudicating applications in a timely manner. Particularly where USCIS's interpretation disincentivizes prompt adjudications and penalizes applicants for delays entirely within the Government's control, the Court maintains that, as found by the Sixth, Ninth, and Tenth Circuits under similar circumstances, it is USCIS's reading that leads to the absurd result that eligible applicants receive disparate results based on the timing of when USCIS chooses to adjudicate their applications. *See Soumah I*, 738 F. Supp. 3d 640–41; *Carpio*, 592 F.3d at 1102; *Lockhart*, 573 F.3d at 260; *Choin*, 537 F.3d at 1121. In this instance, the absurdity is compounded by the fact that under USCIS's position, although USCIS granted lawful permanent residence to Soumah over 15 years ago after he was entirely truthful about his

15

family circumstances, he would presently have no legal means by which he could ever become a United States citizen.

### D.   Agency Interpretations

USCIS also cites agency-created sources of authority, including a general regulation, 8 C.F.R. § 103.2(b)(1), and a USCIS policy manual, both of which the Court previously addressed in denying the Motion to Dismiss. *See Soumah I*, 738 F. Supp. 3d at 642–43. The regulation generally states that a noncitizen seeking a benefit from USCIS "must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 C.F.R. § 103.2(b)(1). Beyond the language of the regulation, which this Court previously addressed, *see Soumah I*, 738 F. Supp. 3d at 642, USCIS asserts that this language must be applied to § 1159(b)(3) because § 1159(b) authorizes adjustment of status "in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe," 8 U.S.C. § 1159(b), and that as a result of this language, the Court's interpretation of the statute must "foreclose[]" any regulatory requirement that might alternatively clarify the procedure for adjustment." Def.'s Mot. Summ. J. at 9.  8 C.F.R. § 103.2(b)(1), however, is a general regulation not promulgated in order to interpret § 1159(b); the only such regulation is 8 U.S.C. § 209.2, which as relevant here merely restates the restrictions provided for by the statute. *See id.*; *see also Dorbor*, 379 F. Supp. 3d at 768 n.2 ("The agency has promulgated a regulation related to § 1159(b)(3), but it is nearly identical to the statute."). Further, even if 8 C.F.R. 103.2(b)(1) is considered, it does not apply here because, as applied to § 1159(b)(3), it runs contrary to the proper interpretation of the statutory language, which provides only that the requirement of § 1159(b)(3) is to be satisfied at the time of application. *See Soumah I*, 738 F. Supp. 3d at 643; *Texas v. Env't Protection Agency*, 726 F.3d 180, 195 (D.C. Cir. 2013)

16

(stating that a "valid statute always prevails over a conflicting regulation"); *see also Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266, 2273 (2024) (stating that a statutory ambiguity "is not a delegation to anybody," and that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority").

 *Injeti v. U.S. Citizenship & Immigration Services*, 737 F.3d 311 (4th Cir. 2013), cited by USCIS because it identified a different section within 8 C.F.R. § 103.2 that must be satisfied in order for an applicant to qualify for adjustment of status under 8 U.S.C. § 1255, does not alter this conclusion. In *Injeti*, the court held that an applicant for adjustment of status based on marriage to a lawful permanent resident was properly found to be ineligible for naturalization because she had obtained adjustment of status based on misrepresentations and further reasoned that her adjustment of status was not valid because, in light of the fraud, she had not complied with the general requirement in 8 C.F.R. § 103.2(a)(2) that the applicant must certify under penalty of perjury that the benefit request and all evidence submitted in support of it are "true and correct." *Injeti*, 737 F.3d at 317–18 (quoting 8 C.F.R. § 103.2(a)(2)). That certification requirement, however, was entirely consistent with the statute authorizing adjustment of status, 8 U.S.C. § 1255, and thus could provide an additional requirement for adjustment of status. By contrast, 8 C.F.R. § 103.2(b)(1) is inconsistent with the statutory language of § 1159(b) in that it would impose a requirement that runs counter to the statute. It therefore cannot alter or override the statutory requirement that compliance with eligibility requirements is assessed as of the date of application.

 In its reply brief, USCIS also argues that the agency's longstanding interpretation of 8 U.S.C. § 1159(b) construing the provision to require satisfaction of all eligibility criteria through the time of adjudication should be given "due respect" under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2267 (2024). The Court has previously addressed the sources

17

referenced by USCIS under, as applicable, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and concluded that they did not provide a basis to adopt USCIS's position, including because several of those sources provided interpretations that were "unreasonable, arbitrary, and capricious." *Soumah I*, 738 F. Supp. 3d at 641–43. Where *Loper Bright*, which was decided after the Court's ruling on the Motion to Dismiss, reduced the degree of deference owed to agency interpretations, the Court again finds that the agency interpretations do not provide a basis to adopt USCIS's position. *See Loper Bright*, 144 S. Ct. at 2273 (holding that "courts need not and . . . may not defer to an agency interpretation of the law simply because a statute is ambiguous").

## IV.    Naturalization

For the reasons discussed above, the Court determines that none of USCIS's new arguments provides a basis to alter its previous conclusion that 8 U.S.C. § 1159(b)(3) requires only that a derivative asylee continue to be married to the asylee at the time of application in order be eligible for adjustment of status to lawful permanent residence. *See Soumah I*, 738 F. Supp. 3d at 643. The Court therefore finds that Soumah, who had been married to Diane at the time of his application for adjustment of status under 8 U.S.C. § 1159(b), satisfied the requirement of 8 U.S.C. § 1159(b)(3). In turn, where the only basis for denying Soumah's application for naturalization was the determination that he had not met that requirement, the parties have stipulated that Soumah met all other enumerated requirements for naturalization, and the parties waived a hearing on Soumah's naturalization application, ECF No. 36, the Court will grant Soumah's application for naturalization. *See Adjei v. Mayorkas*, 59 F.4th 659, 669 (4th Cir. 2023).

18

## CONCLUSION

For the foregoing reasons, USCIS's Motion for Summary Judgment, ECF No. 37, will be DENIED, Soumah's Cross Motion for Summary Judgment, ECF No. 39, will be GRANTED, and judgment will be entered in favor of Soumah.  A separate Order shall issue.

Date:  February 27, 2025

THEODORE D. CHUANG
United States District Judge